# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# BEAUFORT DIVISION

| | |
|---|---|
| Altony Brooks, | ) |
| | ) C.A. No.: 9:15-cv-2677-PMD-BM |
| Plaintiff, | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| Captain Jacumin, Officer Fludd, and | ) |
| Berkeley County Sheriff's Office, | ) |
| | ) |
| Defendants. | ) |
| | ) |

This matter is before the Court on Plaintiff's objections to Magistrate Judge Bristow Marchant's Report and Recommendation ("R & R") (ECF Nos. 217, 214, & 204). In his R & R, Magistrate Judge Marchant recommends granting Defendants' motion for summary judgment. For the reasons stated herein, the Court adopts the R & R and grants Defendants' motion for summary judgment.

## BACKGROUND

This 42 U.S.C. § 1983 action arises out of a September 2013 incident at the Hill-Finklea Detention Center ("HFDC"). Plaintiff Altony Brooks alleges that he was lured out of his cell at HFDC, taken to the booking area, and told that he needed to have his picture taken. Plaintiff resisted having his picture taken by moving his head repeatedly to prevent a clear picture. After the detention officers spent seven and a half minutes trying to convince Plaintiff to comply with HFDC's photograph policy, the officers warned Plaintiff that if he kept resisting he would be tased. Despite that warning, Plaintiff continued to resist, so Sergeant Johnston fired her taser. According to Defendants, Plaintiff continued to resist even after being tased, so Sergeant Johnston tased him again. Surprisingly, however, Plaintiff still continued to resist. Sergeant

Johnston then tased Plaintiff a third time, and at that point he allowed the officers to take his photograph. Although it is undisputed that Plaintiff was tased three times, the parties' versions of the facts diverge as to whether Plaintiff continued to resist after being tased the first time. According to Plaintiff, he stopped resisting after the first use of the taser. As a result, he now sues, claiming that Captain Jacumin and Officer Fludd are liable under § 1983 for use of excessive force, and raising various state-law causes of action against the Berkeley County Sheriff's Office.[1]

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court. The R & R has no presumptive weight, and the responsibility for making a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). Parties may make written objections to the R & R within fourteen days after being served with a copy of it. 28 U.S.C. § 636(b)(1). This Court must conduct a de novo review of any portion of the R & R to which a specific objection is made, and it may accept, reject, or modify the Magistrate Judge's findings and recommendations in whole or in part. *Id.* Additionally, the Court may receive more evidence or recommit the matter to the Magistrate Judge with instructions. *Id.* A party's failure to object is taken as the party's agreement with the Magistrate Judge's conclusions. *See Thomas v. Arn*, 474 U.S. 140 (1985). Absent a timely, specific objection—or as to those portions of the R & R to which no specific objection is made—this Court "must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

---

1. Plaintiff also asserted claims against several other officers, including Sergeant Johnston, but those aspects of the case have been dismissed. (*See* Order, ECF No. 110.)

*Pro se* filings are held to a less stringent standard than those drafted by attorneys, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), and federal district courts must construe such pleadings liberally to allow the development of potentially meritorious claims, *see Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam). The liberal construction requirement, however, does not mean courts can ignore a clear failure to allege facts that set forth claims cognizable in federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

## **ANALYSIS**

Plaintiff filed two separate sets of objections to the Magistrate Judge's R & R. In his first objection (ECF No. 214), Plaintiff requests that the Court consider an additional response in opposition to Defendants' motion for summary judgment when reviewing the R & R. Plaintiff attached that response as an exhibit to his objection. Plaintiff's "objection" does not make any specific objection to the R & R and is therefore improper. *See* Fed. R. Civ. P. 72(b) ("a party may serve and file specific, written objections to the [Magistrate Judge's] proposed findings and recommendations"). Moreover, even counting Plaintiff's response in opposition to Defendants' motion for summary judgment as mailed on January 17, 2017, as Plaintiff claims it should be, that response would still have been filed more than two weeks after the December 31, 2016 deadline. *See* Local Civ. Rule 7.06 (D.S.C.). For both of those reasons, Plaintiff's first "objection" is overruled.

The majority of Plaintiff's second set of objections (ECF No. 217) either rehash arguments made to the Magistrate Judge, or fail to specifically object to the R & R. However, Plaintiff does make one relevant objection to the Magistrate Judge's qualified-immunity analysis. In the R & R, the Magistrate Judge concluded that Plaintiff continued to resist even after Sergeant Johnston first used her taser. Plaintiff objects, claiming that he stopped resisting after

the first tasing. The R & R references the video of the incident submitted by Defendants, and the Magistrate Judge concludes the video shows that Plaintiff did continue to resist. As a result, the Magistrate Judge also explicitly concluded that no constitutional violation occurred. After carefully examining the video, the Court agrees that Plaintiff continued resisting having his picture taken after the first two times he was tased. The Magistrate Judge also states that even assuming, without deciding, that a constitutional violation occurred in this case, Defendants would still be entitled to qualified immunity because the law concerning the use of tasers against inmates was not settled at the time of the incident. The Court need not reach the qualified immunity analysis because it concludes that no constitutional violation occurred.

As the Magistrate Judge thoroughly described in his R & R, law enforcement officer bystanders may be held liable for another officer's act of excessive force if the bystanders possess the power to prevent it but fail to do so. *Randall v. Prince George's County*, 302 F.2d 188, 203 (4th Cir. 2002). For such liability to attach here, Defendants Fludd and Jacumin must have: (1) known that Sergeant Johnston was violating Plaintiff's constitutional rights, (2) had a reasonable opportunity to prevent the harm, and (3) purposefully chosen not to act. *Id.* at 204. At the time of the incident, Plaintiff was incarcerated at HFDC while awaiting a post-conviction relief hearing. As a result, his claims fall under the Eighth Amendment. *See Whitley v. Albers*, 475 U.S. 312, 318 (1986). In determining whether an officer's use of force violates the Eighth Amendment, the Court must determine whether the "force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 320–21. In making that determination,

> courts should consider the necessity for the application of force; the relationship between the need for force and the amount of force used; the extent of the injury inflicted; the extent of the threat to the safety of the staff and other prisoners as reasonably perceived by prison officials based on the facts known to them at the

4

time; and the efforts, if any, taken by the officials to temper the severity of the force applied.

*Boone v. Stallings*, 583 F. App'x 174, 176 (4th Cir. 2014) (per curiam) (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

Even viewed in the light most favorable to him, Plaintiff was refusing to obey the detention officers' commands that he allow them to take his picture until after he was tased for the third time. The Court bases its opinion on Plaintiff's allegations and on its numerous painstaking reviews of the video of the incident.[2] As a result, the Court lays out the incident as can be seen in the video. The first seven and a half minutes of the video show the detention officers attempting to convince Plaintiff to let them take his picture. There is no evidence of the use of force against Plaintiff during this time frame, and the detention officers calmly warn Plaintiff that he would be tased if he continued to resist having his picture taken. Throughout the incident, Plaintiff was restrained in handcuffs and was being held by two detention officers. After the detention officers attempted to reason with Plaintiff and after warning him that continued non-compliance would result in the use of force, Plaintiff continued his resistance and Sergeant Johnston used her taser for the first time. Plaintiff then fell to the ground, writhed and kicked for approximately five seconds, and ultimately laid still.

Plaintiff then talked with the detention officers for another ten seconds, during which time the officers tried to get him to get up off of the floor so that they could take his picture. Instead, Plaintiff continued to lay on the ground. Sergeant Johnston then tased him for the second time. The entirety of the time Plaintiff was on the ground, the detention officers did not apply any additional physical force and they attempted to convince him to stand up so that they

---

2. Courts have "credited the plaintiff's version of the facts only to the extent consistent with record video evidence." *Garcia v. McClaskey*, No. 1:12CV93, 2016 WL 2903234, at *6 (M.D.N.C. May 18, 2016) (collecting cases).

could take his picture. After the second use of the taser, the officers helped Plaintiff to his feet and again instructed him to look at the camera so that they could take his picture. After the detention officers spent yet another minute attempting to convince Plaintiff to comply with their commands, Sergeant Johnston tased Plaintiff for the third time. Plaintiff started to fall to the floor but was caught by several of the officers. After the third tasing, Plaintiff finally complied with the detention officers' commands to allow them to take his picture.

Having established the facts, the Court now turns to the factors enumerated in *Hudson*. First, the Court believes that there was a need for some use of force to secure Plaintiff's cooperation in taking his photograph. HFDC's policy requires that each inmate have his picture taken each time he is housed at HFDC. This policy is reasonable as identification of inmates is vital to detention center security. *See Zargary v. City of New York*, 607 F. Supp. 2d 609, 613 (S.D.N.Y. 2009) ("Being able to accurately identify inmates is clearly essential to maintain security at correctional facilities."). Plaintiff can be clearly seen refusing to comply with the detention officers' orders. As a result, to secure Plaintiff's photograph some degree of force was necessary. *See Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984), ("Inmates cannot be permitted to decide which orders they will obey, and when they will obey them. Someone must exercise authority and control.") *cited in Rendelman v. Scott*, 378 F. App'x 309, 313 (4th Cir. 2010) (per curiam). Thus, the first factor favors the Defendants. Second, the Court evaluates the relationship between the need for force and the amount of force used. This factor also favors the Defendants. Defendants used a taser to secure Plaintiff's compliance in order to avoid the danger to both officer and inmate that accompanies the use of physical force. There is no question that "[d]eploying a taser is a serious use of force." *Armstrong*, 810 F.3d at 902 (quoting *Cavanaugh v. Woods Cross City*, 625 F.3d 661, 665 (10th Cir. 2010)). However, there was a

serious need for the use of force here, and serious force was needed to secure a repeatedly non-compliant inmate's acquiescence to a simple photograph. Third, the Court looks to the degree of injury inflicted. In addition to the pain Plaintiff suffered from the taser, he also alleges that this incident resulted in a severe knee injury that required surgery. Defendants dispute that allegation, and the video certainly reveals no indication of any knee injury, but viewed in the light most favorable to Plaintiff, the Court must credit his sworn statement of a severe knee injury. Thus, this factor favors Plaintiff. Fourth, the Court assesses the extent of the threat to the safety of the staff and other prisoners as reasonably perceived by the prison officials based on the facts known to them at the time, as well as the efforts they took to temper the severity of the force. Here, based on the video evidence and Defendants' uncontroverted sworn testimony, the Court concludes there was a threat to the safety of the officers because Plaintiff was refusing to comply with one of HFDC's important security policies and because Plaintiff was threatening the officers. As far as the Court can tell, Plaintiff posed no immediate physical safety risk to the officers either before or after Sergeant Johnston's uses of the taser. However, he threatened officers and, as recognized in *Zargary*, prisoner identification is vital to detention center security. Thus, the detention officers could have reasonably perceived a significant threat to the safety of the detention center's staff and inmates. Additionally, the detention officers spent seven and a half minutes attempting to coax Plaintiff into allowing them to take his picture. Thus, Defendants expended significant time and effort in an attempt to avoid the use of force altogether by attempting to reason with Plaintiff to secure a single photograph.

The Court simply cannot hold that the detention officers' conduct in this case is sufficient to create a jury question as to excessive force under *Whitley*'s standard. The use of force here does not appear to have been malicious in the slightest, but was instead used to acquire

7

Plaintiff's compliance with HFDC's picture policy after repeated attempts to avoid the use of force altogether. The detention officers clearly attempted to convince Plaintiff to allow his photograph to be taken and only resorted to the use of force after an extended attempt to reason with him. Moreover, the use of the taser, while painful, avoided the use of rough physical force against Plaintiff and preserved the detention officers' safety. As recognized by the Magistrate Judge, the use of rough physical force would undoubtedly have also been the subject of a § 1983 claim. Although the growing trend of jurisprudence rightly counsels that law enforcement officers must exercise restraint in their use of force, the Court cannot ascertain what additional steps the detention officers could have taken in this situation to secure Plaintiff's compliance. As noted in *Soto* and quoted by the Fourth Circuit in *Rendelman*, inmates cannot be permitted to decide which orders to follow and which orders to ignore, and detention officers must have some means of securing inmates' compliance without endangering their own safety. As a result, the Court concludes that no constitutional violation occurred in this case.

The Court also agrees with the Magistrate Judge's recommendation that Plaintiff's state-law claims be dismissed without prejudice. Where all federal-question claims have been dismissed, this Court may decline to exercise supplemental jurisdiction over any related state-law claims. 28 U.S.C. § 1367. The Court finds it appropriate to do so here. Accordingly, Plaintiff's objection is overruled.

## **CONCLUSION**

For the foregoing reasons, it is **ORDERED** that Plaintiff's objections are **OVERRULED**, that the R & R is **ADOPTED**, that Defendants' motion for summary judgment is **GRANTED**, and that Plaintiff's state-law causes of action are **DISMISSED WITHOUT PREJUDICE**. Accordingly, Plaintiff's motion for summary judgment is **DENIED**, as is Plaintiff's motion for an extension of time to file a response to the R & R. Plaintiff had ample opportunity to address the R & R in his two previous sets of objections to the R & R, and the Court need not consider any further belated filings. Finally, Plaintiff's motion for contempt is also **DENIED**. The Court is satisfied that the additional video of middle booking that Plaintiff seeks has been destroyed in the ordinary course of business and that it is of no importance to Plaintiff's claims.[3]

**AND IT IS SO ORDERED.**

_____
PATRICK MICHAEL DUFFY
United States District Judge

**August 3, 2017**
**Charleston, South Carolina**

---

3. The incident that forms the basis for Plaintiff's claims occurred in back booking.